UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **THOMAS MARSHALL LEE, JR.** | **CIVIL ACTION NO. 5:15-cv-1021** |
| **VS.** | **SECTION P** |
| | **JUDGE S. MAURICE HICKS** |
| **STEVE PRATOR, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Pro se plaintiff Thomas Marshall Lee, Jr., proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on March 30, 2015. Plaintiff is a detainee in the custody of the Caddo Corrections Center (CCC); he is awaiting trial on drug charges pending in the First Judicial District Court.[1] He claims that his right to correspond with another inmate, Ms. Belinda A. Lacour, have been interfered with by the defendants; he also implies that this interference is in retaliation for a previous civil action filed on March 12, 2015, by the plaintiff. [*See Thomas Marshall Lee, Jr. v. Steve Prator, et al.*, No. 5:15-cv-0600] Plaintiff herein sues Caddo Parish Sheriff Steve Prator and his deputies, Sgts. Acklin and Escade. He prays for compensatory damages and the recognition of his right to correspond with Ms. Lacourt. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and that all outstanding motions be **DENIED.**

---

[1] http://www.caddosheriff.org/inmates/?lastNameChar=L

*Statement of the Case*

Plaintiff is a pre-trial detainee awaiting trial on drug charges lodged in the First Judicial District Court. On March 12, 2015, he filed a civil action against Sheriff Prator and others complaining of his transfer to the CCC's Mens Mental Health (MMH) unit and the confiscation of his medication by corrections staff. [*See Thomas Marshall Lee, Jr. v. Steve Prator, et al.*, No. 5:15-cv-0600]

On March 30, 2015, he filed the instant complaint. According to plaintiff he and Belinda Lacour, an inmate in the custody of Louisiana's Department of Corrections (DOC) "have been together sharing residence and also share community and financial investments..." and have been corresponding to one another since January 2015. On March 20 plaintiff was called to Sgt. Escade's office and "threatened to be disciplined" if he and Lacour continue their correspondence. According to plaintiff these threats were in retaliation for the lawsuit he filed on March 12.

Thereafter, plaintiff requested permission to correspond with Ms. Lacour; his request was intercepted by Sgt. Acklin who denied the request and threatened disciplinary action should he and Ms. Lacour continue their correspondence.

Plaintiff complained that mail sent to him by inmate Lacour, who he calls his fiancé, is being seized and with held from plaintiff. Plaintiff filed a series of inmate grievances which have been denied and he has been threatened with placement in lock-down should he continue to file grievances raising the same subject matter. Plaintiff provided a copy of a Kite Communication he submitted on or about March 23, 2015, in which he claimed to be in a "common law marriage" with Ms. Lacour. He claimed that Ms. Lacour is an inmate at a DOC facility in St.

Gabriel, Louisiana (presumably the Louisiana Corrections Institute for Women[2]) and that they are entitled to correspond with one another. This Kite was denied with the notation, "This is not a 'common law' jail." [Doc. 1-2]

On April 14, 2015, plaintiff filed a pro se pleading indicating his desire to join Ms. Lacour as "co-defendant to plaintiff." He also indicated that she was now in custody at some facility located at 1005 W. Green St., Tallulah, Louisiana[3] and that CCC "has illegally confiscated and refuses to return our mail which is only 'love letters.'" [Doc. 6] On the same date plaintiff filed an "Amendment to Facts" along with copies of his grievances and copies of prior correspondence between plaintiff and Ms. Lacour. Therein he again complained that he was threatened and that his mail was confiscated on March 20, 2015. He also claimed that on March 23, 2015, he was transferred to Echo Dorm, lost his trusty status, and removed from the drug treatment program in retaliation for his "ongoing grievances and legal issues against staff and this facility." He claimed that he submitted a grievance about this transfer at 1:30 p.m. and he was immediately returned to his old dorm, his trusty status was restored, and he was re-enroled in the drug rehabilitation program. Further, according to plaintiff, he received correspondence from and corresponded to, Ms. Lacour, who he characterized as his "girlfriend" from January 23 - March 10, 2015 and only experienced problems in this regard after he filed his prior civil action. Thereafter, he recapitulated the facts alleged in the prior civil action [*Thomas Marshall Lee, Jr. v.*

---

[2] See http://www.doc.la.gov/pages/correctional-facilities/louisiana-correctional-institute-for-women/

[3] Presumably the Steve Hoyle Correctional Center. See http://www.mapquest.com/maps?name=Steve%20Hoyle%20Rehab%20Center&address=1005%20W%20Green%20St&city=Tallulah&state=LA&zipcode=71282

*Steve Prator, et al.*, No. 5:15-cv-0600] which complained of placement in lock-down, placement in MMH, and issues concerning his medication. He then provided copies of his grievances, namely,

    1. Grievance No. G 15040001 dated April 1, 2015, concerning the seizure of his correspondence to Ms. Lacour and his belief that this seizure was an act of retaliation for having filed Civil Action No. 5:15-cv-0600. [Doc. 7-2, p. 2]

    2. Offender's Relief Request Form dated April 1, 2015, from Sgt. Roraback rejecting Grievance No. G 15040001 as follows, "Refer to page 18-19 of the Inmate Handbook. You may not correspond with inmates in any correctional center unless: (1) You are co-defendants, (2) are legally married, or (3) share parental rights to a child." [Doc. 7-2, p. 3]

    3. Grievance No. G 15030232 dated March 23, 2015, complaining about being rehoused from Charlie Dorm and the loss of trusty status and rehabilitation opportunities; and grievance No. G 15030234 dated March 26, 2015, which alleged that soon after filing Grievance G 15030232 he was returned to Charlie Dorm and allowed to resume trusty status and rehabilitation programs. [Doc. 7-2, pp. 4-7]

    4. Offender's Relief Request Form dated March 26, 2015, from Sgt. Roraback rejecting Grievance No. G15030232 as follows, "Your specific relief desired on ARP G 15030232 was 'place me back in Charlie Programs immediately – I got all my class participation signed.' In your own words you said you were rehoused back ... in 3 or 4 hours. Thus, your complaint was remedied and was stated on the last rejection." [Doc. 7-2, p. 8]

    5. Purported letters from Ms. Lacour to plaintiff dated January 23, 2015; February 24, 2015; March 8, 2015; March 9, 2015; March 10, 2015 [Doc. 7-3, pp. 1-15]

6. Purported letter from plaintiff to Terry Brown, undated, along with envelope dated January 2015 reflecting that the correspondence was "unacceptable from another facility." [Doc. 7-3, pp. 16-18]

On April 17, 2015, plaintiff again notified the Court of his desire to list Ms. Lacour as "co defendant to the plaintiff." Therein he identified Ms. Lacour as "my gonna be wife." [Doc. 8]

On April 21, 2015, plaintiff again demanded that Ms. Lacour be named "coDefendant to Plaintiff" and in addition demanded $25,000 in damages. [Doc. 9]

On April 23, 2015, plaintiff again requested that Ms. Lacour "my girlfriend and my true love" be named "Codefendant to the plaintiff." [Doc. 10]

*Law and Analysis*

*1. Screening*

As a prisoner seeking redress from an officer or employee of a governmental entity, plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. §1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is

5

plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Correspondence Between Prisoners*

The available evidence indicates that CCC promulgated and enforced a regulation concerning inmate to inmate correspondence. According to Sgt. Roraback's April 1, 2015, rejection of Grievance No. G 15040001, inmate to inmate correspondence is permitted only: (1) between inmates who are co-defendants, (2) inmates who are legally married, or (3) inmates who share parental rights to a child. [Doc. 7-2, p. 3] Plaintiff implies that this regulation, as applied to him and Ms. Lacour, violates their rights to freedom of speech and expression as guaranteed by the First Amendment to the United States Constitution.

In *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the Supreme Court analyzed a similar prison regulation that generally prohibited correspondence between inmates in other correctional institutions. The regulation, like the CCC regulation at issue, permitted correspondence with immediate family members who are inmates in other correctional institutions and correspondence between inmates "concerning legal matters." *Id.*, p. 81.

The Court initially recognized that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Id.* at 84.  The Court then observed, "Because prisoners retain these rights, '[w]hen a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.' *Procunier v. Martinez*, 416 U.S., at 405–406, 94 S.Ct., at 1807–08."

The Court, again citing *Procunier v. Martinez*, then articulated a second principal that must be considered, namely that "courts are ill equipped to deal with the increasingly urgent

6

problems of prison administration and reform ...";  that "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree... ";  and, that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." [*Id.*, at 85 (citations omitted)]

Having applied the analysis articulated in *Procunier v. Martinez* as set forth above the Court concluded that the prison regulation prohibiting inmate to inmate correspondence "was reasonably related to legitimate security interests..." and thus not violative of the First Amendment. [*Id.*, at 91]

Plaintiff attacks an almost identical regulation herein; he has not demonstrated, nor can he, that the regulation in question violates his Constitutional rights in any way, and therefore, to the extent that he claims a First Amendment violation, he fails to state a claim for which relief may be granted.

*3. Retaliation*

In addition to his implied First Amendment claim, plaintiff also claims that the defendants have retaliated against him for filing his first Civil Rights complaint.  He identifies two acts of retaliation, (1) the prohibition of his correspondence with Ms. Lacourt; and, (2) his brief placement in Echo Dorm.

To prevail on the claim for retaliation under section 1983, a prisoner must prove (1) the exercise of a specific constitutional right; (2) the defendants' intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation, which, in this context means  that, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v.*

*Steward*, 132 F.3d 225, 2331 (5th Cir.1998). The prisoner must produce direct evidence of motivation, or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir.1995). The plaintiff must allege more than just his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1999).

While the law mandates that prison officials may not retaliate against prisoners for exercising their constitutional rights, Courts must nevertheless take a skeptical view of retaliation claims to avoid meddling in every act of discipline imposed by prison officials. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir.2006). Retaliation against a prisoner is actionable only if it is capable of deterring a prisoner of ordinary firmness from further exercising his constitutional rights. *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir.2008), citing *Morris*, *supra* at 686.

Plaintiff claims that he was denied the opportunity to correspond with Ms. Lacour within days of March 12, 2015, the day he filed his first civil rights complaint against Sheriff Prator and others. He implies that once the suit was served, the retaliatory acts began. However, the records of this Court reveal that the civil action referred to remains on initial review and has not yet been served on the defendants. *See Thomas Marshall Lee, Jr. v. Steve Prator, et al.*, No. 5:15-cv-0600. Indeed, there is no evidence to establish that the defendants were even aware of the suit when they began to enforce the prohibition against inmate to inmate correspondence.

Further, plaintiff cannot establish a retaliatory adverse act in as much as the prison's prohibition against inmate to inmate correspondence is apparently of long standing, was published in the inmate handbook, and thus clearly predated the filing of the above referenced lawsuit. [Doc 7-2, p. 3] Finally, a close reading of Ms. Lacour's correspondence to plaintiff

reveals that CCC began enforcing the inmate to inmate correspondence ban as early as February 2015. In her letter dated February 24, 2015 Ms. Lacour wrote, "... well I just got your last letter back that I sent you. I'm sorry baby I did not no (sic) you could not seal them..." [Doc. 7-3, p. 5] In her March 10, 2015 letter she wrote, "I'm sorry you have not got my letters I have sent you about 8 letters since I have been here..." [Doc. 7-3, p. 13] Finally, it seems that plaintiff was sending and receiving correspondence through his mother's address. Indeed, in a letter written in January 2015 he instructed his friend Terry Brown, "Well write me back thur (sic) Moms address..." which he provided. [Doc. 7-3, pp. 15-17

Plaintiff also claims that his short-lived transfer to Echo Dorm was in retaliation for having filed the prior lawsuit. However, as noted above, as soon as plaintiff complained about the transfer, he was allowed to return to his Dorm and resume his trusty status. Clearly, plaintiff is unable to establish a retaliatory adverse act.

In short, plaintiff's retaliation claims are frivolous.

### 4. *Motions to Join Belinda Lacour as Co-plaintiff*

Plaintiff has filed a motion to add Belinda Lacour as a co-plaintiff. [See Docs. 6, 8, 9, and 10] Local Rule 3.2 of the Western District of Louisiana provides, "Each pro se prisoner shall file a separate complaint alleging a violation of their civil rights." Thus, plaintiff may not join Ms. Lacour as a co-plaintiff. Should she decide to litigate this issue, she should file a separate complaint in the proper jurisdiction.

### *Conclusion and Recommendation*

Therefore,

Plaintiff's Motions Motions to Add Co-plaintiff [Docs. 6,8, 9, and 10] are **DENIED**; and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, May 19, 2015.

_____
**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**